RAWLS, Judge
(dissenting).
The complaint in this cause sounds in general assumpsit, thus the law implies a contract by reason of plaintiff’s allegations. Having implied a contract in favor of plaintiff, the majority then proceeds to imply venue upon the theory of the “debtor must seek the creditor”. Or, stated another way, venue has been assigned by an implication based upon an implication.
The argument is made: This is not a suit on the contract. If it were a suit for breach of contract then venue would lie at the place the contract was consummated.[1] However, since this is a suit in general assumpsit for the payment of money, it matters not where the contract was consummated, the cause of action being founded not upon the breach, but for failure to pay money.
Such a premise makes a nice logical argument which, in my opinion, reaches an illogical result. Where suits may be begun has been the object of considerable litigation in this State. The initial and subsequent decisions, rendered upon specific facts and observations including some obiter dictum which has been seized upon and cited as the law of the case, have in my opinion resulted in an “Alice in Wonderland answer” in the case of contracts.
Our Supreme Court in the landmark case of Croker v. Powell [2] relied to a great extent upon the following statement made by the Supreme Court of Kentucky in Littell v. Nichols’s Adm’rs: [3]
“It is too well settled to be now questioned, that it is the duty of the debtor who owes money to seek his creditor wherever he may be in the Kingdom, in Britain, (say in the state, with us) and pay the debt; and if the law has made the debt assignable, as it is in the present case; as soon as the debt is assigned, and notice given to the debtor, the assignee, instead of the obligee, becomes the creditor, and is clothed with all his rights.”
It is significant that the Littell case concerned a suit upon a promissory note and reached the above conclusion after first declaring that venue lies where the breach of *5 contract takes place and that the breach of contract takes place where the contract should have been performed. Also, the following significant observation is found in the Littell case, viz.:
“The British doctrine of venue is not analogous to the case in question; because the statute of Richard II, on which it is founded, directed that all actions arising on contract, should be brought where in the county the contract was made.”
Insofar as I have been able to ascertain, the cited statute of Richard II is a part of the common law of this State even though it was not considered a part of the law of the Commonwealth of Kentucky when the Littell decision was written.
The majority relies heavily upon the doctrines expressed in Croker v. Powell, supra. There, an attorney who resided in Duval County entered into an express agreement with a resident of Palm Beach County for the furnishing of professional services. Mr. Justice Whitfield speaking for the Supreme Court volunteered several principles of law which amounted to obiter dictum in view of the facts recited. The law of the case as I interpret same is summed upon the following statement:
“ * * * Where there is an express promise to pay, and no place of payment is stipulated, the debtor should seek the creditor unless otherwise provided or agreed. In such cases the cause of action accrues where the default occurred, though it be in the county where the plaintiff resides, and the action may be maintained in such county for the defendant’s breach. See Littell v. Nichols’ Adm’rs, Hardin (Ky.) 66; 40 Cyc. 83; Indian Lumber Co. v. Roux, 106 Fla. 77, 143 So. 142.” [Emphasis supplied.]
So, the law of the Croker case was limited to the facts contained therein, the salient one being the existence of an express agreement.
The next significant case is that of Producers Supply, Inc. v. Harz.[4] There, the J. Schnarr Company located in Orange County, sold goods to defendant whose main office was situated in another county. The Schnarr Company assigned its claim to one A. W. Harz, in Orange County, who instituted an action in assumpsit against the defendant. In disposing of defendant’s plea of privilege, the Supreme Court held:
“It is settled law in this state that the parties to an agreement may provide therein where suit may be brought to enforce it if such should become necessary, but in the absence of such a specification, a cause of action accrues where the breach of contract accrues or where the payee resides and a suit based on failure to pay may be brought where such failure accrues.”
Thus, a literal interpretation of the Producers case leads one to the conclusion that venue travels around with one who purchases an account. For an example applying the above doctrine, if a housewife buys a sack of potatoes on credit from a merchant in Pensacola, and the merchant sells this account to a purchaser in Miami, then venue would follow the assignment and could be lodged in a Court situated in Dade County. I submit that such a rule for venue is illogical and absurd.
M. A. Kite Company v. A. C. Samford, Inc.[5] is a case wherein a majority opinion seemingly was not reached by this Court. There, Judge Wigginton, speaking for a shaky majority as indicated by a foundation of quicksand in the special concurrence of Judge Carroll, concluded that where an action based on contract is for the payment of money and no agreement exists as to the place of payment, venue may lie where the creditor resides or has a place of business. In his special concurrence Judge Carroll noted the difference between a specific con *6 tract and an action on general assumpsit and concluded that venue may lie with the residence of the plaintiff creditor if the complaint contains a count sounding in general assumpsit. Judge Sturgis dissented, thus producing a “three-way split decision” of this three-judge court.
The majority cites Edgewater Drugs, Inc. v. Jax Drugs, Inc.[6] as authority for this Court’s stamp of approval of the M. A. Kite opinion. As set out in the recited facts, that suit arose out of a sale of goods from Duval County where the contract was consummated and the resultant breach occurred. In retrospect, I conclude that the decision in that case, although correct, should have been founded upon the principle that venue lies where the contract was consummated rather than upon the debtor-creditor principle. Although this writer concurred in citing with approval the Kite doctrine, I now confess the error of my ways and refrain from further perpetuation of error.
It is my conclusion that the dictum enunciated in the Croker case has been en-grafted in and expanded upon by the cited subsequent decisions to such an extent that the courts have judicially amended F.S. § 46.01 F.S.A., and added thereto the following phrase: “suits for payment of money may be begun in the county where the plaintiff resides or maintains his principal place of business.” I submit that the correct rule is — absent a clear breach of contract arising out of violation of a specific agreement rather than one by implication— the cause of action will accrue where the contract was made, and therefore it is time to reexamine the Croker case and the “debtor seeks the creditor” philosophy in fixing venue.
Having discussed at great length my view concerning the misapplication of “the debt- or seeks the creditor” philosophy as applied to the venue cases, I am of the firm, opinion that even acknowledging the correctness of such rule, when applying that doctrine to the facts appearing in this record, venue of this cause cannot lie in Duval County. In my opinion, the facts disclosed in plaintiff Tomlinson’s deposition places venue in Okaloosa County. Plaintiff Tomlinson, a real estate broker whose office and residence were located in Duval County, heard through a friend, a Mr. Butler — an erstwhile licensed real estate salesman presently living in Oklaoosa County — that-defendant Duggan might sell his fee simple title in a tract of timber lands. On August 5, 1958, Tomlinson drove over to Crestview and contacted Butler, who arranged for the two of them to meet defendant in his office. During this conversation, Tomlinson states that Duggan gave him a description of the property and his asking price. Tomlinson further testified that he met with various prospects in Crestview and there consulted with Duggan on March 31, 1959, June 14, 1960, July 20, 1960 and July 22, 1960. Tomlinson deposed that the land was sold by Duggan to one Rasberry, whom he had produced and that Duggan had not paid him a commission.
Of particular interest in determining the question of venue is Tomlinson’s allegation in his complaint that: “ * * * said compensation or commission did become payable to plaintiff at his office in the City of Jacksonville, Duval County, Florida, on to-wit April 30, 1962.” The date of April 30, 1962, according to the complaint is the date of the closing of the sale of the lands for the sum of $2,122,260.00 and the date of recording the deed for same in Okaloosa County, Florida. Of particular significance is Tomlinson’s testimony on deposition that he did not discuss with Duggan “into any details” as to how his commission was to be paid, who was to pay it, or when it would be paid. Tomlinson testified that at all times he would get a net per acre price from Duggan, add his commission of $2.50 per acre to the asking price, and quote the land to his prospects at such price. Therefore, *7 by his own testimony, an agreed debtor-creditor relationship was never established between the parties, and Tomlinson is relying upon what he terms “the custom of the trade” to establish such relationship. In doing so he testified that “ * * * any trade I’ve ever been in where the commission was added to the net price it was paid to the owner and the owner disbursed it to the broker.” This is the sole proof supporting the allegations in the complaint as to any sum being payable and is not proof that it was payable in Jacksonville, Florida. Furthermore, Tomlinson testified that in a cash transaction (and he understood this to have been a cash one) the broker normally would attend the closing and collect his fee at the closing. Therefore, the undisputed testimony of the plaintiff supports defendant’s premise that if there were a breach of any contract, such breach occurred in Okaloosa County, Florida, on April 30, 1962, by the failure of defendant to there and then pay to plaintiff any sums due.
We are confronted with an analogous situation in Williams v. Scholfield.[7] There, plaintiff, a prospective purchaser of land, filed his complaint for damages in Alachua County against defendant, a resident of another county. The following excerpt taken from the opinion authored by Judge Wigginton is what I consider to be the controlling law of the case:
“From an examination of the record before us it is clearly implied that the contract involving the purchase and sale of appellant’s property located in Alachua County was to be performed in that county. It was there that the property forming the subject matter of the contract was situated. Appellant had offered the property for sale through an Alachua County broker whom he constituted as his agent. In the absence of any express provisions to the contrary it is presumed that the deed conveying the property to appel-lee would be delivered in Alachua County where it is entitled to record, and that appellee’s mortgage securing the balance of the unpaid purchase price would for the same reason be delivered there.”
Paraphrasing the above quotation, from an examination of the record before us it is clearly implied that the alleged contract involving the purchase and sale of appellant’s property located in Okaloosa County was to be performed in that county. It was there that the property forming the subject matter of the contract was situated. It was there that the deed was delivered and the cash disbursed, and it is there— Okaloosa County — where plaintiff should be required to seek his relief.
I, therefore, dissent.

. Peters v. E. O. Painter Fertilizer Co., 73 Fla. 1001, 75 So. 749 (1917).

. Croker v. Powell, 115 Fla. 733, 156 So. 146 (1934).

. Littell v. Nichols’s Adm’rs, Hardin’s 66 (Ky. 1805).

. Producers Supply, Inc. v. Harz, 149 Fla. 594, C So.2d 375 (1942).

. M. A. Kite Co. v. A. C. Samford, Inc., 130 So.2d 99 (Fla.App.1st 1961).

. Edgewater Drugs, Inc. v. Jax Drugs, Inc., 138 So.2d 525 (Fla.App.1st 1962).

. Williams v. Scholfield, 144 So.2d 89 (Fla.App.1st 1962).